UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SENECA NATION OF INDIANS,

   Plaintiff,

   v.

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES, et al.,

   Defendants.

Civil Action No. 14-1493 (JDB)

## MEMORANDUM OPINION & ORDER

This case arises from a protracted contract dispute between the Seneca Nation and the U.S. Department of Health and Human Services. Under the contract in question, Seneca Nation assumed responsibility for administering health programs previously administered by the Indian Health Service. In return, the Secretary provides federal funds in the amount required by annual funding agreements (AFAs). Every year between 2012 and 2015, Seneca Nation has proposed amending its AFA to include additional funding. But every year, the Secretary has refused. Seneca Nation has appealed the Secretary's 2012 refusal to the Interior Board of Indian Appeals; it has challenged the Secretary's 2013, 2014, and 2015 refusals in this Court, seeking declaratory and injunctive relief and damages for breach of contract. Now, the Secretary has moved to dismiss all of Seneca Nation's claims for lack of jurisdiction. Alternatively, it seeks a stay of this action, pending resolution of the 2012 claim by the Interior Board of Indian Appeals. For the reasons explained below, the Court will enter a stay.

## BACKGROUND

Under the Indian Self-Determination and Education Assistance Act, tribal organizations may contract with the Department of Health and Human Services to administer programs,

1

functions, services, or activities previously administered by that agency for the benefit of Indians. See 25 U.S.C. § 450f. Once a tribe contracts to administer a program, the amount of funding due under the contract may be renegotiated annually. Id. § 450j(c)(2). The resulting annual funding agreement becomes part of the overarching contract, and the Secretary must fund the program in the amount specified. Id. § 450l(c)(b)(4).

Ongoing contract negotiations are heavily structured by the statute and implementing regulations. The Secretary may deny contract amendments proposed by tribal organizations only under limited circumstances—and if the Secretary does not act on a proposed amendment within 90 days or obtain an extension, the amendment automatically becomes part of the contract. See id. § 450f(a)(2). Negotiated funding levels may never dip below a statutory "base amount," equal to the amount that the Secretary would allocate to the tribally administered program if administering it herself, plus support costs. See id. § 450j-1(a). And, of particular importance here, the statutory scheme restricts the Secretary's ability to reduce funding from one year to the next. The Secretary may not decline "any portion of a successor annual funding agreement," if "it is substantially the same as the prior annual funding agreement." 25 C.F.R. § 900.32; see also 25 U.S.C. § 450j-1(b) (Secretary may only reduce statutory base amount under limited circumstances).

If a dispute arises, tribal organizations may seek damages, injunctive relief, or mandamus against the Secretary in federal court. See 25 U.S.C. § 450m-1(a). But not every complaint can arrive in court by the same route. Complaints seeking payment of a specific sum under a contract, requesting adjustment or interpretation of a contract's terms, or advancing "[a]ny other claim relating to" a contract, must first be submitted to the contracting officer for decision in accordance with the Contract Disputes Act. 25 C.F.R. § 900.218(a); 25 U.S.C. § 450m-1(d) (the Contract

2

Disputes Act "shall apply to self-determination contracts"). Complaints challenging contract or amendment declinations, on the other hand, may be brought directly to federal court. See 25 C.F.R. §§ 900.150, 900.153. Alternatively, they may be appealed administratively to the Interior Board of Indian Appeals and, from there, to the Secretary. See id. §§ 900.152, 900.165. If a tribal organization pursues the latter path, it may ultimately obtain judicial review of the Secretary's actions under the Administrative Procedure Act.

The dispute between Seneca Nation and the Secretary traces to their 2010 and 2011 AFAs. In April 2011, well after those agreements had been adopted, Seneca Nation wrote to the Indian Health Service (IHS) to propose an amendment: the addition of approximately $3.8 million in funding to each agreement, in order to account for a "recently discovered [and] substantial undercount of [Seneca Nation's] active user population." Am. Compl. [ECF No. 14] ¶¶ 14–15. IHS provided no response. After waiting four months without an answer, Seneca Nation sent a second letter, arguing that its proposed amendments had been approved by operation of law when the Secretary failed to respond within the statutory 90-day window. This second letter drew a response from IHS, which took the position that Seneca Nation's proposals were properly brought as claims under the existing AFAs—not as amendments to them. Heeding that position, Seneca Nation resubmitted its proposals as claims under the Contract Disputes Act. See Defs.' Mot. [ECF No. 20] at 9–10. When IHS denied those claims, Seneca Nation sued. And it won. Judge Collyer concluded that Seneca Nation's proposals, properly construed as amendments, were approved by operation of law when the Secretary failed to address them by the statutory deadline. Seneca Nation of Indians v. U.S. Dep't of Health and Human Servs., 945 F. Supp. 2d 135, 152 (D.D.C. 2013).

Meanwhile, the parties continued negotiating AFAs. Not surprisingly, their success was somewhat limited—each subsequent negotiation has prompted litigation. After the Secretary's 90-day window for dealing with the 2010 and 2011 amendments had closed, but before it had filed its suit, Seneca Nation proposed adding the same $3.8 million to its 2012 AFA. This time, IHS declined the amendment within the required period. But rather than bring a federal lawsuit at that time, Seneca Nation elected to take an administrative appeal to the Interior Board of Indian Appeals—which is currently stayed pending the outcome of this litigation, at Seneca Nation's request.[1] See Am. Compl. ¶ 21; Pl.'s Opp'n [ECF No. 21] at 5. Another round of proposed amendments was triggered in mid-2013 by Judge Collyer's decision. Seneca Nation proposed adding $3.8 million to its 2013 AFA, which had been signed the year before. Around the same time, it also submitted a 2014 AFA proposal requesting more than $15 million in additional funding. Both of these proposals were declined. See Am. Compl. ¶¶ 22–29. Seneca Nation's subsequent proposal to add $3.8 million to the 2015 AFA has also been declined. See Am. Compl. ¶¶ 32–34.

Seneca Nation now brings this action, asking the Court to declare that the Secretary's 2013, 2014, and 2015 declinations were unlawful; to enjoin the Secretary to reverse those unlawful declinations; to award $3.8 million in contract damages for each year in dispute; and to declare that the Secretary must continue to provide the contested $3.8 million in each subsequent year, until a reduction is authorized by statute. In response, the Secretary has moved to dismiss, on two grounds. The first is ripeness. In the Secretary's view, because the statutory scheme makes the

---

[1] In some places, the parties suggest that Seneca Nation's first lawsuit was already pending before Judge Collyer when it took its 2012 appeal to the Interior Board of Indian Appeals. See Pl.'s Opp'n at 4; Defs.' Reply [ECF No. 23] at 6. As far as the Court can tell, however, Seneca Nation's administrative appeal was filed on November 30, 2011, and its first lawsuit was filed on September 10, 2012. See Ex. B to Pl.'s Mot. [ECF No. 20-2]; Seneca Nation, 945 F. Supp. 2d at 141. Either way, the Court's analysis is unaffected.

4

amount of funding that may be provided in a given year contingent on the amount provided in the last, the legality of the 2013–15 declinations is inextricably intertwined with that of the 2012 declination. The legality of the 2012 declination, however, remains pending before the agency. Until it is resolved, the Secretary argues, there is no ripe controversy for the years 2013–15. Second, the Secretary advances an independent reason for dismissing the three contract claims: Seneca Nation's alleged failure to comply with the Contract Disputes Act's "jurisdictional" prerequisites to bringing suit in federal court. As an alternative to dismissal, the Secretary asks the Court to stay this litigation, pending the agency's resolution of the 2012 claim. See Defs.' Mot. at 22–23. The Court will address this last request first, and ultimately withhold judgment on the Secretary's jurisdictional arguments.

## ANALYSIS

A federal court may not rule on the merits of a case without first determining that it has subject matter jurisdiction. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998). Courts do have leeway, however, "to choose among threshold grounds for denying audience to a case on the merits." Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007) (internal quotation marks omitted). As long as the Court does not wield "substantive law declaring power," id. at 433 (internal quotation marks omitted), "certain non-merits, nonjurisdictional issues may be addressed preliminarily, because 'jurisdiction is vital only if the court proposes to issue a judgment on the merits,'" Public Citizen v. U.S. Dist. Court for the Dist. of Columbia, 486 F.3d 1342, 1348 (D.C. Cir. 2007) (quoting Sinochem, 549 U.S. at 431) (brackets omitted).

The Secretary's motion to stay, which does not ask the Court to declare the substantive law, presents a non-jurisdictional threshold ground for denying audience to a case on the merits. See Pan Am Flight 73 Liaison Grp v. Davé, 711 F. Supp. 2d 13, 20 (D.D.C. 2010) (citing

5

Sinochem, 549 U.S. at 431). Thus, the Court can address it before the jurisdictional issues raised by the Secretary. See IBT/HERE Emp. Representatives' Council v. Gate Gourmet Div. Ams., 402 F. Supp. 2d 289, 293 (D.D.C. 2005) (entering a stay without resolving disputed question of subject matter jurisdiction); Furniture Brands Int'l, Inc. v. U.S. Int'l Trade Comm'n, 804 F. Supp. 2d 1, 4–5 (D.D.C. 2011) (considering whether to stay or dismiss under the "first-to-file" rule, then dismissing, without resolving disputed question of subject matter jurisdiction); Weaver v. Pfizer, Inc., 2014 WL 2002212, at * 2 (E.D. Cal. May 15, 2014) ("As a stay is not a decision on the merits, there is no bar to considering the question before considering the jurisdictional questions presented . . . .").

Turning to the stay requested here, "[a] trial court has broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere." Hussain v. Lewis, 848 F. Supp. 2d 1, 2 (D.D.C. 2012) (internal quotation marks omitted). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. North Am. Co., 299 U.S. 248, 254 (1936). "Indeed, a trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." Hisler v. Gallaudet Univ., 344 F. Supp. 2d 29, 35 (D.D.C. 2004) (internal quotation marks and alteration omitted). When those related proceedings are unfolding at an agency, a court must "carefully consider the true value that would follow prior completion of the related agency proceedings" before entering a stay. Rohr Indus., Inc. v. Wash. Metro. Area Transit Auth., 720 F.2d 1319, 1325 (D.C. Cir. 1983). "[T]he case for deference [to an agency] is great" when the relevant agency proceedings are close to completion. Id. at 1326.

According to Seneca Nation, a stay would "simply waste time and resources." Pl.'s Opp'n at 12. In its view, all its claims—the 2012 claim before the agency and the later claims before this Court—raise the same legal issue: the "preclusive effect of Seneca I on subsequent fiscal years." Id. at 5. The Court, it argues, should promptly resolve that legal issue. It should not wait for an agency decision that "would not be final" or "materially assist [the] Court" in reaching a conclusion. Id. at 12.

The Court disagrees, and hence will enter the stay. Even if the agency's determination will be subject to appeal, there is value in giving the Interior Board of Indian Appeals and the Secretary the opportunity to address the critical issue before this Court weighs in. Generally speaking, an agency ought to have "an opportunity to correct its own mistakes"—assuming, as Seneca Nation argues, the 2012 declination was a mistake—"with respect to the programs it administers before it is haled into federal court." Woodford v. Ngo, 548 U.S. 81, 89 (2006) (internal quotation marks omitted). "When an agency has the opportunity to correct its own errors, a judicial controversy may well be mooted, or at least piecemeal appeals may be avoided." McCarthy v. Madigan, 503 U.S. 140, 145 (1992). And even where, as here, a controversy is likely to survive administrative review, the agency proceedings "may produce a useful record for subsequent judicial consideration." Id. Of course, it is true that Seneca Nation could have brought its 2012 claim directly to this Court, bypassing the agency entirely. See 25 C.F.R. § 900.153. But now that Seneca Nation has invoked the administrative process, this Court hesitates to override it. All these factors therefore counsel in favor of a stay in this case pending a decision by the agency on the 2012 claim.

So does the interest in judicial efficiency. In the Court's view, a temporary stay of this action is the best way to ensure orderly, efficient litigation with a foreseeable endpoint. The 2012

7

claim is fully briefed before the Interior Board of Indian Appeals, see Defs.' Mot. at 23, so a decision could follow in relatively short order. Perhaps that decision, or one by the Secretary on appeal, will stand as the final disposition of Seneca Nation's 2012 claims. In that event, the Court would turn to the 2013–15 claims, comfortable that the full administrative process had run its course. More likely, the agency's final determination will be appealed to federal court under the Administrative Procedure Act. But in that case, the 2012 claim could be consolidated with the 2013–15 claims currently pending before the Court, effectively unifying this piecemeal litigation and creating the possibility of a final judicial decision capable of resolving all Seneca Nation's claims. In that consolidated action, the Secretary's ripeness arguments would become moot. Then, having set those arguments to the side, the Court could begin its analysis at the logical starting point: with the 2012 declination, which Seneca Nation acknowledges "might conceivably have some bearing on subsequent fiscal years." Pl.'s Opp'n at 7. In so doing, it would have the benefit of the record compiled before the agency and the agency's rationale for its decision.

Adopting Seneca Nation's proposed approach would disregard these efficiencies, reinforce the fractured and disorderly nature of this litigation, and create the possibility of delay. First, the Court would need to address the Secretary's ripeness arguments, which, if resolved against Seneca Nation, could result in the dismissal of the entire complaint. Assuming the Court could proceed to the merits, it would then have to grapple with the 2012 declination, without first hearing the agency's final word on the subject. Ultimately, this Court would rule. The Interior Board of Indian Appeals, however, would be left in the anomalous position of deciding the prior—both logically and chronologically—2012 claim, after the subsequent years' claims had already been decided. Perhaps the parties would agree about how the new court decision should apply to the 2012 claim.

But perhaps they would not, and the litigation before the agency would give rise to yet another federal lawsuit, to be decided years in the future. That is in no one's interest.

## CONCLUSION

For the reasons stated above, the Court believes a temporary stay to be efficient, in the best interest of the parties, and consistent with the proper role of agency adjudication in the federal system. Hence, it is hereby

**ORDERED** that this action is **STAYED** pending the resolution of Seneca Nation's 2012 claim by the Interior Board of Indian Appeals and, if applicable, by the Secretary; and it is further

**ORDERED** that the parties shall promptly file a notice of this decision with the Interior Board of Indian Appeals.

**SO ORDERED**.

/s/
JOHN D. BATES
United States District Judge

Dated: November 13, 2015